# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TERRI HAILEY, Grantor for the Estate ）
of JERRY SCOTT HAILEY and ）
TERRI HAILEY ）
 ）
           Plaintiffs, ）
 ）
v. ）    Civil Action No. 3:11CV269–HEH
 ）
BANK OF AMERICA, N.A., *et al.*, ）
 ）
           Defendants. ）

## <u>MEMORANDUM OPINION</u>
### (Granting Bank of America and Recontrust Company's Motions to Dismiss)

This is an action for alleged breach of fiduciary responsibilities, violation of the

Truth in Lending Act ("TILA"), and illegal securitization. (Compl. 1–2.) This matter

comes before the Court on Bank of America, N.A. ("BANA"), and Recontrust Company,

N.A. ("Recontrust") (collectively the "Bank Defendants") Motion to Dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both parties have submitted

memoranda of law in support of their respective positions. The Court will dispense with

oral argument because the facts and legal contentions are adequately presented in the

materials presently before the Court and argument would not aid in the decisional

process. For the reasons discussed herein, the Bank Defendants' motions will be granted

in part and the case will be remanded to state court.

# I.

Terri Hailey and Jerry Scott Hailey ("Plaintiffs"),[1] proceeding *pro se*, filed this action in the Circuit Court for Chesterfield County on April 1, 2011. On April 26, 2011, Defendants removed the case to this Court based on alleged federal question jurisdiction. 28 U.S.C. § 1331. The Complaint is nearly incomprehensible; it alleges few facts and it is difficult to ascertain the claims being brought and the relief sought. It asserts a variety of confusing legal conclusions and non-germane allegations.

From what the Court has been able to decipher from the Complaint, Plaintiffs at some point obtained a mortgage on the property located at 7824 Halyard Terrace in Chesterfield, Virginia.[2] Plaintiffs appear to allege violations of TILA and breach of fiduciary duty arising out of this mortgage transaction. They also appear to claim that the alleged securitization or resale of the promissory note underlying the mortgage transaction makes Plaintiffs' obligations under the mortgage unenforceable.

The TILA claim is the sole basis for federal subject matter jurisdiction over this case.[3] The breach of fiduciary duty and unlawful securitization claims arise under state

---

[1]    Plaintiffs purport to bring this action on behalf of, and as the beneficiaries of their own estates. However, because both Terri and Jerry Hailey signed the Complaint themselves, the Court assumes that the Haileys are living, and that they actually intend to bring this action on their own behalf rather than on behalf of their estates.

[2]    At one point the Complaint claims that the mortgage was "signed on the date of August 27, 2007," (Compl. 24.), while elsewhere it appears to indicate that the mortgage was signed on February 8, 1993. (Compl. 7.)

[3]    Defendants, in their Notice of Removal, only allege original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the TILA claim. Jurisdiction over the remaining claims is supplemental pursuant to 28 U.S.C. § 1367. (Notice of Removal ¶¶ 11–15.)

law.  The Fair Debt Collection Practices Act[4] ("FDCPA") and the Real Estate Settlement

Procedures Act[5] ("RESPA") are mentioned in the Complaint; however, it appears that

Plaintiffs simply reference these federal statutes in the context of discovery or

informational requests aimed at Defendants.  Certainly, no essential element of Plaintiffs'

cause of action turns on the application of these federal laws.  *See McCorkle v. First Pa.*

*Banking & Trust Co.*, 459 F.2d 243, 250 (4th Cir. 1972) ("For a cause of action to 'arise

under' federal law, and thus to satisfy the requirements of § 1331, a federal right,

privilege or immunity must be an essential element of the plaintiff's cause of action.").

In one passage of the Complaint, Plaintiffs claim that the negotiable instrument in

question is governed by the UNCITRAL Convention on International Bills of Exchange,

International Promissory Notes, and Money Orders.[6]  However since the rest of the

Complaint repeatedly cites provisions of the Uniform Commercial Code ("UCC") as the

---

[4]     "This is also a request to validate and verify the debt under the Fair Debt Collection Practices Act.  Verification requires written statements and claims under notarized seal." (Compl. 3.)

[5]     "It is our understanding that the Note is part of the Security and/or Warranty Deed and they must be attached in order for anyone under the RESPA if we desire to know the names of the Holders-in-Due course of our account."  (Compl. 2.)  "[Y]ou are hereby required to respond to Grantor's RESPA, 'Written Qualified Request', 'Writ of Discovery' within in time frame required by law." (Compl. 3.)

[6]     "This instrument is governed by: UNCITRAL Convention on International Bills of Exchange, International Promissory Notes, and Money Orders, 1988 United Nations (UN)." (Compl. 9.)

appropriate law governing the underlying transaction,[7] the Court will assume that Plaintiff's reference to the UNCITRAL Convention is an error.[8]

In sum, the TILA claim is the only question of federal law appearing in the Complaint which amounts to an "essential element of the plaintiff[s'] cause of action." *McCorkle*, 459 F.2d at 250, and is therefore the only basis for federal question jurisdiction under 28 U.S.C. § 1331.

## II.

To survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Mere labels and conclusions stating that the plaintiff is entitled to relief are not enough. *Id.* at 555, 127 S. Ct. at 1964–65. "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965; *see also Ashcroft v.*

---

[7]    "This instrument is tendered by the 'Secured Party Creditors', Jerry Scott and Terri Hailey, hereinafter 'Maker/Lender', in good faith, and in accordance with law, as codified at UCC sec. 1-103, 1-104, 1-201(28)(30), 3-103(a)(6), 3-104(a)(b), 3-106, 3-108, 3-109, 3-110, 3-112, 3-113, 3-114, 3-115, 3-118, 3-412, 3-501, 3-502, 3-603 . . . ." (Compl. 10.)

[8]    Furthermore, Plaintiffs provide neither a factual basis for their claim that the instrument is governed by international treaty law, nor discuss what effect this bald legal conclusion has on their cause of action.

*Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume plaintiff's well-pleaded factual allegations to be true and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

When interpreting a *pro se* complaint, courts must afford the complaint a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). However, the court need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* As Judge Wilkinson noted in *Beaudett v. City of Hampton*, "though [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

## III.

TILA regulates the relationship between lenders and borrowers to facilitate the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). Creditors who fail to comply with the disclosure or other requirements of TILA may be liable to borrowers for damages or can be obligated to rescind the loan transaction. *See* 15 U.S.C. § 1640. A plaintiff alleging violations of TILA must bring a claim for damages within one year of the alleged violations, *see* 15 U.S.C. § 1635(e), or a claim for rescission within three years. *See* 15 U.S.C. § 1635(f).

Plaintiffs Complaint does not state a "claim to relief" under TILA that is "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. The Complaint does not allege who, other than Plaintiffs, was party to the initial loan transaction, when that transaction took place, or what role the Defendants played in the alleged TILA violations.[9] Nor does the Complaint allege what specific TILA violations occurred or what relief Plaintiffs seek. Plaintiffs merely allege that "[a]s a violation of the Truth-in-Lending Act, the closing attorney for the alleged lending institution failed to disclose some material fact that has negatively impacted the financial standing of [Plaintiffs.]" (Compl. 9.) This is precisely the kind of bare legal conclusion that does not pass muster under the heightened pleading standard of *Twombly*, 550 U.S. 544, 127 S. Ct. 1955.

Elsewhere in the Complaint, Plaintiffs allege that "the signatures of [Plaintiffs] were assets to the lending institution and an offset for the debt in equal value for the purchase of their home unbeknown to them, which is a violation of TILA." (Compl. 2.) Although this part of the Complaint at least suggests what type of conduct may form the basis of this claimed violation, there is still no way of knowing who Plaintiffs allege is responsible for the alleged violation, and how or when it took place.

Plaintiffs have not supported their bald assertion that TILA violations took place with sufficient factual information to state a plausible claim for relief. *See Twombly*, 550

---

[9]     The complaint never attributes any of the allegations to a specific defendant, but rather alludes repeatedly to conduct by "the closing agent of the lending institution" who would appear to be the Mid-Atlantic Financial Group, (*see* Compl. 7,) which is not a defendant in this case.

U.S. at 570, 127 S. Ct. at 1974. Accordingly the Bank Defendants' Motion to Dismiss will be granted for the TILA claim.[10]

Because subject matter jurisdiction over the remaining claims was supplemental to the TILA claim (Notice of Removal ¶¶ 11–15), the remaining claims will be remanded to the Circuit Court for Chesterfield County. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 553 n.4 (4th Cir. 2006) (noting district court's wide discretion to dismiss supplemental state law claims after dismissing the federal claims).

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: July 1, 2011
Richmond, VA

---

[10] Even if the purported TILA claim somehow stated a cause of action, it would still be barred by the applicable statute of limitations. Claims under TILA must be brought within three years of the consummation of the transaction when seeking rescission, 15 U.S.C. § 1635(a),(f), and within one year when seeking damages. 15 U.S.C. § 1640(e). Even assuming that the more recent of the two dates alleged in the Complaint was in fact the closing date of the mortgage transaction, each applicable statute of limitations began to run on August 27, 2007. Because the alleged TILA violations concern failure to make required disclosures at the time of the transaction, August 27, 2007 is also the date when the alleged violations would have occurred. *See Stevens v. Rock Springs Nat. Bank*, 497 F.2d 307, 309–10 (10th Cir. 1974) (discussing that disclosure violations occur at the time of the credit transaction). The TILA claim would therefore be time barred.